NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) Supreme Court No. S-16474 |
| DENISE F., | ) Superior Court No. 3AN-16-02087 PR ) |
| | ) MEMORANDUM OPINION ) AND JUDGMENT* ) |
| | ) No. 1743 – September 25, 2019 ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Douglas O. Moody, Deputy Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Denise F. Ruth Botstein, Senior Assistant Attorney General, and Dario Borghesan, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for State of Alaska.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I. INTRODUCTION

A woman with a long history of chronic paranoid schizophrenia was involuntarily committed for 30 days. She appeals her commitment order, arguing that

---

\*      Entered under Alaska Appellate Rule 214.

there was a less restrictive outpatient alternative available. Reviewing the order under the public interest exception to the mootness doctrine, we affirm the superior court's decision.

## II.     FACTS AND PROCEEDINGS

Denise F.[1] is a 65 year old with a longstanding diagnosis of chronic paranoid schizophrenia. In 2016 Denise was a client of Anchorage Community Mental Health Services (ACMHS), receiving assistance from a case manager in ACMHS's institutional discharge program. In May Denise moved out of an assisted living facility, New Concepts, and into her own apartment. At some point after she moved out of New Concepts, Denise stopped taking the psychiatric medications she had been prescribed.

In late August 2016, Denise's case manager became concerned when Denise said that she had not eaten for a week because of her belief that the food she had would make her ill. The case manager called the police for a welfare check, and the police took Denise to the Providence Hospital Psychiatric Emergency Room.

The next day the hospital discharged Denise to her case manager, who took her to New Concepts. According to the case manager, this was because Denise did not feel that she was able to live independently. New Concepts requires residents to take prescribed medication, and when this was explained to Denise, she would not agree to make another appointment to see her psychiatrist or to start taking medications.

From New Concepts, Denise's case manager drove her to a smoke shop, so she could buy some tobacco. But Denise became noticeably distressed at the store, and the case manager, believing her erratic behavior to be the result of delusions, eventually took her back to the emergency room. Providence staff petitioned for her

---

[1]     We use a pseudonym to protect her privacy.

emergency hospitalization for evaluation, which the superior court authorized. Denise was evaluated at Alaska Psychiatric Institute (API), and an evaluating doctor petitioned for her 30-day commitment.

At the commitment hearing, the evaluating doctor testified that he believed Denise was gravely disabled because she was "unable to feed herself and take care of herself adequately and safely in the community." He hoped to treat Denise as an inpatient at API so that she could "equilibrate," and he planned to encourage her to take medication to help her delusions. The doctor noted Denise's desire to live independently and her rejection of both her schizophrenia diagnosis and her need for medication. He stated that he would "like to support her in [living independently] as much as she can but also in accepting the limitations that she has that make it difficult for her to survive in the community."

Asked whether there were less restrictive treatment alternatives, the doctor responded that the only community alternative was support from ACMHS. He stated, "[A]s we heard the testimony today, they don't seem to be able to give her adequate support for her to survive in the community independently." He believed inpatient treatment at API was the least restrictive treatment available.

When Denise testified, she confirmed that she was not taking medication at API and wanted "to stay as medication free as possible." But she left open the possibility that she would take small doses of medication if necessary. During the hearing she also stated that she was "misdiagnos[ed]" with paranoid schizophrenia.

At the close of the hearing, the master concluded that Denise was gravely disabled and recommended her commitment at API. The master noted that placement at New Concepts would require Denise to take medication and that it was apparent "she wants to survive on as little medication as possible."

The superior court adopted the master's recommendation and entered an order committing Denise to API for up to 30 days. In the written findings accompanying the order, the court stated that Denise

> was delusional and had not been taking her medicine since moving out of assisted living at New Concepts in May. . . . She is gravely disabled and unable to live independently. She does not believe that she has a mental illness and does not want to take any medications, even though she improves while on medication . . . . New Concepts requires its residents to take their medicine.

The superior court concluded "by clear and convincing evidence" that "[n]o less restrictive facility would adequately protect the respondent."

Denise appeals the superior court's commitment order.[2]

## III. DISCUSSION

Denise argues that the superior court erred when it concluded that placement at API was her least restrictive treatment option. Under Alaska law, courts contemplating an individual's involuntary commitment "must consider whether a less restrictive alternative would provide adequate treatment."[3] "Finding that no less restrictive alternative exists is a constitutional prerequisite to involuntary hospitalization."[4] The least restrictive alternative is defined by statute as

> mental health treatment facilities and conditions of treatment that

---

[2] That order has expired. However, we review it under the public interest exception to the mootness doctrine. *See In re Hospitalization of Naomi B.*, 435 P.3d 918, 927 (Alaska 2019).

[3] *In re Hospitalization of Jacob S.*, 384 P.3d 758, 768 (Alaska 2016).

[4] *In re Hospitalization of Mark V.*, 375 P.3d 51, 59 (Alaska 2016), *overruled on other grounds by In re Naomi B.*, 435 P.3d at 924-31.

(A) are no more harsh, hazardous, or intrusive than necessary to achieve the treatment objectives of the patient; and

(B) involve no restrictions on physical movement nor supervised residence or inpatient care except as reasonably necessary for the administration of treatment or the protection of the patient or others from physical injury.[5]

The petitioner in a commitment proceeding has the burden to prove by clear and convincing evidence that there are no less restrictive alternatives to involuntary commitment.[6]

Denise argues that the superior court did not adequately consider the alternative of placing her at New Concepts and that the State did not prove that placement at New Concepts was not a less restrictive alternative. We examine for clear error the factual findings underlying the superior court's no less restrictive alternative finding.[7] And we review de novo the mixed question of fact and law presented by the superior court's ultimate conclusion that the State proved, by clear and convincing evidence, there was no less restrictive alternative treatment.[8]

The superior court's conclusion that there was no less restrictive alternative treatment than API was supported by several findings: that Denise "was delusional and

---

[5] AS 47.30.915(11).

[6] *In re Mark V.*, 375 P.3d at 58. "The 'clear and convincing' evidence standard demands 'a firm belief or conviction about the existence of a fact to be proved.' " *Id.* at 59 n.32 (quoting *In re Hospitalization of Stephen O.*, 314 P.3d 1185, 1192-93 (Alaska 2013)).

[7] *Id.* at 55.

[8] *Cf. In re Hospitalization of Lucy G.*, __ P.3d ___, Op. No. 7407 at 18-19, 2019 WL 4383926 at *8 (Alaska Sept. 13, 2019) (explaining the standard of review for a superior court's "least intrusive alternative" finding in the involuntary medication context).

had not been taking her medicine since moving out of assisted living"; that she was "gravely disabled and unable to live independently"; that she did not believe she had a mental illness and did "not want to take any medications"; and that New Concepts required its residents to take prescribed medication. Denise admits that she stopped taking medication shortly after moving to her own apartment and that New Concepts requires residents to take prescribed medication. She also does not contest the court's gravely disabled finding.

The remaining findings — those not conceded by Denise — are supported by the testimony offered at the hearing and are not clearly erroneous. Denise contests the court's finding that she did not want to take any medication, arguing that her testimony indicated that she was willing to do so. But although Denise left open the possibility that she would take small doses of medication upon release from API, the evidence supported the court's oral finding that she "want[ed] to survive on as little medication as possible." Denise refused to take medication when she was first taken to New Concepts, and she denied at the hearing that she was affected with schizophrenia. Based on this evidence, it was not clear error for the court to conclude that Denise did not, in fact, want to take any medication.[9]

Applying de novo review to the court's ultimate conclusion, we agree that the State proved by clear and convincing evidence that there was no less restrictive alternative to commitment at API. Denise was clearly unable to care for herself while living independently. She was taken to New Concepts to explore admission immediately before her hospitalization, but she would not agree to take medication or visit a doctor to explore the issue. And she continued to deny her diagnosis and refuse medication

---

[9] *See, e.g.*, *In re Hospitalization of Jacob S.*, 384 P.3d 758, 769 (Alaska 2016) (affirming commitment order despite testimony from respondent that he was willing to take medication and participate in outpatient care).

despite her hospitalization at API. Denise needed to stabilize in a controlled environment, but due to the medication requirement at New Concepts and her resistance to medication, API was the only viable environment for such stabilization.[10] Therefore we agree with the superior court's conclusion that there was no less restrictive alternative to API.

## IV.  CONCLUSION

We AFFIRM the superior court's commitment order.

---

[10] We have previously affirmed commitment orders when patients' inability to understand or believe they were impacted by mental illness and their resistance to medication made stabilization at proposed outpatient alternatives infeasible. *See In re Jacob S.*, 384 P.3d at 768-69 (affirming commitment order based on findings that respondent "does not believe he has a mental illness and is unlikely to take necessary medication"); *In re Mark V.*, 375 P.3d at 59-60 (affirming commitment order based on findings that respondent was "currently unable to understand his situation, symptoms or current illness" and "reluctant to take any oral medications to help calm him throughout the day"); *In re Hospitalization of Joan K.*, 273 P.3d 594, 602 (Alaska 2012) (affirming commitment order based on testimony from evaluating mental health professionals that respondent "lacked perspective regarding her bipolar disorder, denying she had any mental illness or needed treatment").